**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**

**CIVIL ACTION NO. _______**

| | | |
|---|---|---|
| C. DAYTON KIRK, MD, | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| vs. | ) | **JURY TRIAL DEMANDED** |
| DAVOL INC. and C. R. BARD INC., | ) | |
| Defendants. | ) | |

## Parties

1. Plaintiff, C. DAYTON KIRK ("Dr. Kirk") is a citizen and resident of the State of North Carolina, Pender County.

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and

participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

## Jurisdiction

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and because this is an action by an individual Plaintiff who is a citizen of a different state from the Defendants.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants conduct substantial business in this District, manufactured and advertised the subject Kugel Composix Hernia Patches in this District, received substantial compensation and profits from sales of Kugel Composix Hernia Patches in this District, and made material omissions and misrepresentations and breached warranties in this District.

## Facts

6. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Dr. Kirk's body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Dr. Kirk's' body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

9. On September 5, 2001, Dr. Kirk had an incisional hernia repaired at the Raleigh Community Hospital in Raleigh, NC. A Bard® Composix® E/X Mesh Kugel Patch was implanted into Dr. Kirk by Dr. Richard E. Carlino and Dr. Lewis H. Stocks at this time.

10. The Composix Kugel Patch hernia repair product implanted in Dr. Kirk was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

11. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

12. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

13. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break or fail under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

14. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

15. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

16. By July 13, 2002, Dr. Kirk was experiencing worsening abdominal pains and severe cramping. By July 13, 2002, the pains and cramping had become so severe that Dr. Kirk was forced

to present himself to Raleigh Community Hospital complaining of abdominal pains and severe cramping and constipation associated with nausea and vomiting. Dr. Kirk was diagnosed with a small bowel obstruction and remained hospitalized until July 16, 2002 when he finally showed adequate transient flow of the contents in the large bowel.

17. Between July, 2002 and November, 2006, Dr. Kirk continued to suffer from recurrent problems with bowel obstruction, including cramping and abdominal pains, which his doctors elected to treat by limiting Dr. Kirk's diet. In November, 2006, after a particularly difficult bout, Dr. Kirk became dehydrated, necessitating that he be hospitalized on November 15, 2006.

18. On November 22, 2006, Dr. Lewis H. Stocks performed an exploratory laparotomy, and discovered that the ring joining the Bard® Composix® E/X Mesh Kugel Patch together had broken, and that the mesh was now "[a] large complex ball", to which portions of Dr. Kirk's bowel had attached. Dr. Stocks and his associates then performed "extensive adhesiolysis…over a period of approximately 2 hours, releasing each loop of small bowel and dissecting it from overlying prosthetic mesh that had contracted and balled up."

19. The failure of the memory recoil ring on the Patch implanted into Dr. Kirk caused it to break and directly contributed to Dr. Kirk's pain, suffering, complications, and need for multiple abdominal repair surgeries and hospitalizations after the defective Composix Kugel Patch was implanted.

20. Dr. Kirk has suffered and will continue to suffer physical pain and mental anguish.

21. Dr. Kirk it at an increased risk of further abdominal complications which will necessitate further medical care and treatment.

22. Dr. Kirk has incurred, and will continue to incur, substantial medical bills.

23. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

24. Upon information and belief, DAVOL and BARD failed to comply with the FDA application and reporting requirements.

25. Upon information and belief, DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

26. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

27. Upon information and belief, the complications and failures associated with the Composix Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

28. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and chose not to issue a recall on all Kugel Composix Patches in the face of the high degree of complication and failure rates.

## COUNT I
## Products Liability/Negligence

29. Dr. Kirk re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

30. Defendants DAVOL and BARD were negligent.

31. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use of the Composix Kugel Patch.

32. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care

should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

33. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

34. DAVOL and BARD were aware of the probable consequences of the Composix Kugel Patch. DAVOL and BARD knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Dr. Kirk.

35. Defendants DAVOL and BARD owed a duty to Dr. Kirk to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

36. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

37. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in Dr. Kirk's hernia repair surgery failed, resulting in Dr. Kirk's suffering pain and harm.

38. As a direct and proximate result of DAVOL's and BARD's negligence, Dr. Kirk has suffered injuries and damages and has incurred and will continue to incur medical expenses.

39. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

40. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

41. The Composix Kugel Patches, including the one implanted by Dr. Kirk's surgeon in his body, were defective because they failed to perform safe and effectively for the purpose they were originally designed. Dr. Kirk's Composix Kugel Patch failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Composix Kugel Patch.

42. At all times mentioned, the Composix Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

43. The Composix Kugel Patch implanted into Dr. Kirk was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

44. The Composix Kugel Patches, like the one found in Dr. Kirk, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Dr. Kirk as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Composix Kugel Patch as designed and manufactured was unsafe to Dr. Kirk;

iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to Dr. Kirk;

iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like Dr. Kirk, would expect;

v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

45. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

46. Upon information and belief, the Composix Kugel Patch implanted into Dr. Kirk's body was manufactured during the month of July, 2001. Dr. Kirk discovered the defect in this patch in November, 2006, and this action is brought within six years after the date of initial purchase for use or consumption, pursuant to the provisions of N.C.G.S. §1-50.

47. As a direct and proximate result of DAVOL's and BARD's negligence and conduct, as set forth above. Dr. Kirk has been damaged, and is entitled to have and recover of DAVOL and BARD, an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**COUNT II**
**Unfair and Deceptive Trade Practices - N.C.G.S. 75-1, et seq.**

48. Dr. Kirk re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

49. Defendants DAVOL and BARD engaged in unfair and deceptive trading practices, in or affecting commerce.

50. Defendants DAVOL and BARD are merchants, who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Composix Kugel Patch for hernia repair surgery.

51. Upon information and belief, Defendants DAVOL and BARD committed knowing and willful violations of Chapter 75 of the North Carolina General Statutes, in their study, test, design, development, manufacture, inspection, production marketing, promotion, advertising, distribution and/or sale of the Composix Kugel Patch for hernia repair surgery.

52. Defendants DAVOL and BARD knowingly committed knowing and willful violations of Chapter 75 of the North Carolina General Statutes, when they failed to safely design and construct an effective Composix Kugel Patch for hernia repair surgery.

53. While Defendants DAVOL and BARD knew or reasonably should have known that some Composix Kugel Patches were at risk while they were engaged in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and or selling of the Composix Kugel Patch for hernia repair surgery, specifically that the "memory recoil ring" upon being subjected to stress after placement in the intra-abdominal space posed a significant risk of breakage, separation, migration, tearing and splitting that posed the danger of severe harm and death to patients.

54. DAVOL and BARD did not inform the FDA prior to December 2005 of its knowledge concerning the dangers posed to patients of its Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

55. DAVOL and BARD did not inform the public at large prior to December 2005 of its knowledge concerning the dangers posed to patients of its Composix Kugel Patches which were

susceptible to failure and subject to the Class I recall.

56. DAVOL and BARD failed to give adequate warnings regarding the use and potential problems with such patches used for hernia repair.

57. DAVOL's and BARD's actions occurred while they were engaged in trade and commerce, and all of the conduct occurred during the course of their business.

58. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

59. As a direct and proximate result of the conduct of DAVOL and BARD, Dr. Kirk has been injured, and is therefore entitled to recover damages in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), trebled pursuant to the provisions of N.C.G.S. §75-16, and to recover his attorneys fees and costs pursuant to the provisions of N.C.G.S. §75-16.1.

## COUNT III
## Breach of Implied Warranty

60. Dr. Kirk re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

61. Defendants DAVOL and BARD are liable to Dr. Kirk for their breach of implied warranty in the following respect:

62. DAVOL and BARD sold the Kugel Patch which was implanted in Dr. Kirk. DAVOL and BARD impliedly warranted to Dr. Kirk, his physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were

intended.

63. DAVOL and BARD knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

64. Dr. Kirk, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

65. When the Composix Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

66. Dr. Kirk suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

67. As a direct and proximate result of the breaches of warranty, Dr. Kirk was be damaged in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

**COUNT IV**
**Fraud**

68. Dr. Kirk re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

69. DAVOL and BARD, while in possession of unique and pertinent information involving the safety and mechanical reliability of its Kugel Composix Hernia Patches, presented its Kugel Composix Hernia Patches as mechanically sound and failed to warn of its inherent design and/or manufacturing defects. DAVOL and BARD suppressed this information and continued sales and

marketing of its product to the general public. DAVOL and BARD knew or should have known that Dr. Kirk had no means, other than full, accurate, and objective disclosure by DAVOL and BARD, of obtaining the relevant information.

70. Through their unique knowledge and expertise regarding the affected nature of the Kugel Composix Hernia Patches, and through their statements to physicians and their patients in advertisement, promotional materials, and other communications, DAVOL and BARD professed and affirmed to Dr. Kirk their knowledge of the truth of the representation that the Kugel Composix Hernia Patches were safe for their intended use and were free from design and/or manufacturing defects.

71. The misrepresentations and omissions were made intentionally to induce Dr. Kirk to purchase Defendants' Kugel Composix Hernia Patches, in order to reap the high profit margin relating to the Kugel Composix Hernia Patches.

72. The conduct of DAVOL and BARD took unconscionable advantage of its dominant position of knowledge, engaging in constructive fraud in its relationship with Dr. Kirk. Misled by this veil of fraud, Dr. Kirk reasonably relied on the representations of DAVOL and BARD.

73. As a direct and proximate result of the fraud on the part of DAVOL and BARD, Dr. Kirk has been damaged in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

**WHEREFORE**, the Plaintiff prays the Court as follows:

1. For judgment against the Defendants in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

2. That any amount awarded to the Plaintiff be trebled, pursuant to N.C.G.S. §75-16.

3. That the costs of this action, including the Plaintiff's reasonable attorneys' fees pursuant to N.C.G.S. §75-16.1, be taxed by the Court against the Defendants.

4. For trial by jury on all issues so triable.

5. For such other and further relief as to the Court seems just and proper.

This the 29th day of June, 2007.

/s/ Gary K. Shipman
Attorney for Plaintiff
SHIPMAN & WRIGHT,L.L.P.
11 South Fifth Avenue
Wilmington, NC 28401
Telephone: 910-762-1990
Facsimile: 910-762-6752
gshipman@shipmanlaw.com
North Carolina Bar No. 9464