**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In Re: KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § § § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES ONLY TO** ***Kirk v. Davol, Inc., et. al.*** **C.A. 07-1885** | § § § § | **Chief Judge Mary M. Lisi** |

**PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff C. Dayton Kirk alleges the following against Defendants Davol, Inc. and C.R. Bard, Inc.:

**Parties**

1. Plaintiff, C. DAYTON KIRK ("Dr. Kirk") is a citizen and resident of the State of North Carolina, Pender County.

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. DAVOL designs, manufactures and distributes Composix® Mesh hernia repair patches, including the Composix® E/X Mesh Patch. DAVOL manufactures the Composix® Mesh Hernia Patches ("Composix Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island.

4. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under

the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Composix Patch. It also manufactures and supplies DAVOL with material that forms part of the Composix Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

**Jurisdiction**

5. On February 23, 2007, plaintiffs in the action styled *Montiel v. Davol, Inv. et al.*, Case No. CA 07-064, United States District Court for the District of Rhode Island filed a petition under 28 U.S.C. § 1407 seeking transfer and coordination of litigation involving hernia repair patches manufactured by Defendants.

6. On June 22, 2007, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ordered the consolidation and transfer of actions to this Court creating *In re Kugel® Hernia Repair Patch Litigation*, MDL Docket No. 07-1842-ML.

7. The present matter was filed on June 29, 2007 in the United States District Court for the Eastern District of North Carolina, Southern Division as Case 7:07-cv-00111-BO.

8. On July 11, 2007, Defendants filed a Notice of Potential Tag-Along pursuant to Rule 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation identifying the present action as one appearing to involve common questions of fact with those actions consolidated and transferred under MDL Docket No. 1842.

9. On July 20, 2007, the Judicial Panel on Multidistrict Litigation entered a Conditional Transfer Order (CTO-2) transferring the present matter to this Court under Docket No. 1842. Said

conditional Transfer Order was certified and entered without opposition on August 7, 2007.

**Facts**

10. On September 5, 2001, Dr. Kirk had an incisional hernia repaired at the Raleigh Community Hospital in Raleigh, North Carolina. A Bard® Composix® E/X Mesh Patch, Lot #41GLDP08, REF 0123680, was implanted into Dr. Kirk by Dr. Richard E. Carlino and Dr. Lewis H. Stocks at that time.

11. The Bard® Composix® E/X Mesh Patch, Lot #41GLDP08, REF 0123680, implanted into Dr. Kirk was designed, manufactured and distributed by Defendant DAVOL through its agents, servants and employees and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

12. Upon information and belief, Bard Composix® mesh for hernia repair was introduced in 1997. It was the first ventral hernia repair prosthesis that combined two biomaterials, Bard polypropylene mesh and expanded polytetrafluoroethylene (ePTFE), in one product. The peripheral edge of the polypropylene mesh is heat sealed to the ePTFE layer, resulting in two different sides to the patch.

13. The Defendants use the Composix® bi-layer mesh structure in several of its hernia repair patches including, but not limited to, the Composix® E/X Mesh Patch and the Composix ®Kugel ®Patch.

14. On August 25, 2000, the Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") to notify of their intent to market the Composix® E/X Mesh Patch for use in the reconstruction of soft tissue deficiencies, such as for the repair of hernias and chest wall defects. Thereafter, the 510k Application was approved by the FDA

and the Composix® E/X Mesh Patch was classified as a Class II medical device.

15. The Composix® E/X Mesh Patch was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

16. Upon information and belief, the Composix® Kugel® Mesh Patch and the Composix® E/X Patch are almost exclusively used to repair ventral, i.e., abdominal, hernias, specifically incisional hernias – hernias caused by the failure of the integrity of a prior surgical incision.

17. Upon information and belief, the Composix® Kugel® Mesh Patch is made of bi-layered material identical to the Composix® E/X patch, but also contains a "memory recoil ring" that allows the patch to spring into place and lie flat.

18. Upon information and belief, Defendants DAVOL and BARD are aware of the defect in manufacture and design of the Composix® mesh, including that used in the Composix® E/X Mesh Patch implanted into Dr. Kirk, but have not advised the FDA, physicians or consumers.

19. As the manufacturer, Defendants had an affirmative duty to disclose any and all defects which they knew or in the exercise of reasonable care should have known posed an unreasonable risk of significant harm to its users like Plaintiff Kirk.

20. Upon information and belief, particularly information gathered from the FDA's Manufacturer and User Facility Device Experience Database (hereinafter, "MAUDE"), at least as early as June 2000, DAVOL and BARD received reports of problems and defects in their Composix® mesh patches.

21. These reports advise of bowel adhesions and obstructions and relay surgeons' findings of the patches being "crumbled" and "delaminated."

22. On December 22, 2005, DAVOL issued a Class I recall notice for several lots of the Composix® Kugel® Mesh Patch. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

23. Since December 22, 2005, the recall has been expanded twice to include additional shapes, sizes and production lots of the Composix® Kugel® Mesh Patch.

24. The stated reason for the recall of the Composix® Kugel® Mesh patches was a failure in the memory recoil ring contained in the Composix® Kugel® Patch. According to the recall notice, the failure and breakage of the ring "can lead to bowel perforations (rupture) and/or chronic (recurring) intestinal fistulae (abnormal connections or passageways between the intestines and other organs)."

25. Upon information and belief, the complications and failures associated with the Composix® Patches are not limited to the Composix® Kugel® Mesh Patches which DAVOL and BARD have already recalled, and are not limited to the memory coil ring contained in the Kugel patch as the Defendants have claimed.

26. Upon information and belief, particularly information gathered from MAUDE, as early as August 2001, Defendants have received reports of defects and problems with the Composix® Kugel® Mesh Patches that not only did not mention breakage or disruption of the memory recoil ring, but did not mention the memory coil ring at all.

27. These reports advise of bowel obstructions, adhesions, constipation, and fistula resulting from implantation of Composix® Kugel® Mesh Patches.

28. These reports contain surgeons' findings of "buckled mesh," "patch shriveling" and "edges curled up," as well as descriptions of the mesh as being "crumpled," "wrinkled," "rolled up,"

"delaminated" and "folded."

29. Upon information and belief, particularly information gathered from MAUDE, at least as early as June 2000, DAVOL and BARD received reports of similar problems and defects in the Composix® E/X Mesh Patch.

30. As with the other reports, these reports for the Composix® E/X Mesh Patch advise of bowel adhesions and obstructions, intestinal fistulae, chronic abdominal pain, and separation of the layers of the patch.

31. The Defendants have received reports of failures in the Composix® mesh, the Composix® E/X Mesh Patch and Composix® Kugel® Mesh Patch all detailing similar problems of bowel adhesions and obstructions and intestinal fistulae and describing the patches as separated, delaminated, balled up, shriveled and crumpled.

32. Upon information and belief, DAVOL and BARD are aware of the high degree of complication and failure rate associated with all of their Composix® bi-layer patches, but have taken no action except as to the Composix® Kugel® Mesh Patches containing the memory coil ring.

33. Upon information and belief, DAVOL and BARD are aware of the defect in manufacture and design of all of their Composix® bi-layer patches, but have taken no action to advise consumers or their physicians or to remove these products from the market.

34. Given that the MAUDE adverse event reporting system is a voluntary system for healthcare providers and is widely considered to reflect gross under-reporting of actual adverse events, Defendants' limited recalls were clearly inadequate.

35. By July 13, 2002, Plaintiff was experiencing worsening abdominal pains and severe cramping. The symptoms being so severe, Dr. Kirk was forced to present himself to Raleigh

Community Hospital complaining of abdominal pains and severe cramping and constipation associated with nausea and vomiting. Dr. Kirk was diagnosed with a small bowel obstruction and remained hospitalized until July 16, 2002 when he finally showed adequate transient flow of the contents in the large bowel.

36. Between July, 2002 and November, 2006, Dr. Kirk continued to suffer from recurrent problems with bowel obstruction, including cramping and abdominal pains, which his doctors elected to treat with medication and by modifying and restricting Dr. Kirk's diet. In November, 2006, after a particularly difficult bout of cramping, nausea, vomiting and abdominal pain, Dr. Kirk suffered severe dehydration, necessitating that he be hospitalized.

37. On November 22, 2006, Dr. Lewis H. Stocks performed an exploratory laparotomy, and discovered that the Bard® Composix® E/X Mesh Patch had failed, and that the mesh was now "a large complex ball" to which portions of Dr. Kirk's bowel had attached. Dr. Stocks and his associates then performed "extensive adhesiolysis…over a period of approximately 2 hours, releasing each loop of small bowel and dissecting it from overlying prosthetic mesh that had contracted and balled up."

38. The failure of the Composix® E/X Mesh Patch implanted into Dr. Kirk directly caused and contributed to Dr. Kirk's small bowel obstruction, pain, suffering, other resulting complications, and need for multiple abdominal repair surgeries and hospitalizations after the defective Composix® bi-layer patch was implanted.

39. Dr. Kirk has suffered and will continue to suffer physical pain and mental anguish.

40. Dr. Kirk is at an increased risk of further abdominal complications which will necessitate further medical care and treatment.

41. Dr. Kirk has incurred, and will continue to incur, substantial medical bills.

42. Upon information and belief, DAVOL and BARD are aware of the defect in manufacture and design of the non-recalled Composix® bi-layer patches, including the Composix® E/X Mesh Patch, but have chosen not to warn physicians or consumers or issue a recall on, or take any action with regard to, all Composix® bi-layer patches despite the high degree of complication and failure rates.

**COUNT I**
**Products Liability/Negligence**

43. Dr. Kirk re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

44. Defendants DAVOL and BARD were negligent.

45. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use of the Composix Patch.

46. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Patch's users.

47. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Patch, that they were dangerous and unsafe

for the use and purpose for which it was intended.

48. DAVOL and BARD were aware of the probable consequences of the Composix Patch. DAVOL and BARD knew or should have known the Composix Patch would cause serious injury, such as the injuries suffered by Plaintiff; they failed to disclose the known or knowable risks associated with the Composix Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Dr. Kirk.

49. Defendants DAVOL and BARD owed a duty to Dr. Kirk to adequately warn him and his treating physicians of the risks of failure, layer separation, and the loss of or failure to maintain shape associated with the Composix Patch and the resulting harm and risk it would cause patients.

50. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Patch.

51. As a direct and proximate result of the duties breached, the Composix Patch used in Dr. Kirk's hernia repair surgery failed, resulting in Dr. Kirk's suffering pain and harm.

52. As a direct and proximate result of DAVOL's and BARD's negligence, Dr. Kirk has suffered injuries and damages and has incurred and will continue to incur medical expenses.

53. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

54. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Composix Patch for hernia repair surgery.

55. The Composix Patches, including the one implanted by Dr. Kirk's surgeon in his body, were defective because they failed to perform safe and effectively for the purpose they were originally designed. Dr. Kirk's Composix Patch failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Composix Patch.

56. At all times mentioned, when implanted into Plaintiff, the Composix® E/X Mesh Patch was substantially in the same condition as when it left the possession of DAVOL.

57. The Composix Patch implanted into Dr. Kirk was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

58. The Composix Patches, like the one found in Dr. Kirk, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Dr. Kirk as follows:

i. The Composix Patch was sold in a defective condition by design and manufacture;

ii. The Composix Patch as designed and manufactured was unsafe to Dr. Kirk;

iii. The Composix Patch as designed and manufactured was unreasonably dangerous to Dr. Kirk;

iv. The Composix Patch did not perform safely as an ordinary consumer/patient, like Dr. Kirk, would expect;

v. The Composix Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Composix Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Defendants failed to use adequate, safe and effective materials and an adequate, safe and effective design in the Composix Patch to allow the product to function in the purpose for which it was intended;

ix. Defendants failed to use adequate, safe and effective materials and design that would prevent the migration of the Composix Patch and/or its components from the initial site of the hernia repair surgery;

x. Defendants failed to use adequate, safe and effective materials and design that would prevent the Composix Patch from becoming misshapen once implanted; and,

xi. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Patches for hernia repair surgery as will be learned during discovery.

59. Defendants' conduct in continuing to market, sell and distribute the Composix Patch

after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

60. Upon information and belief, the Composix Patch implanted into Dr. Kirk's body was manufactured during the month of July, 2001. Dr. Kirk discovered the defect in this patch in November, 2006, and this action is brought within six years after the date of initial purchase for use or consumption, pursuant to the provisions of N.C.G.S. §1-50.

61. As a direct and proximate result of DAVOL's and BARD's negligence and conduct, as set forth above. Dr. Kirk has been damaged, and is entitled to have and recover of DAVOL and BARD, an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**COUNT II**
**Unfair and Deceptive Trade Practices - N.C.G.S. 75-1, et seq.**

62. Dr. Kirk re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

63. Defendants DAVOL and BARD engaged in unfair and deceptive trading practices, in or affecting commerce.

64. Defendants DAVOL and BARD are merchants, who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Composix Patch for hernia repair surgery.

65. Upon information and belief, Defendants DAVOL and BARD committed knowing and willful violations of Chapter 75 of the North Carolina General Statutes, in their study, test, design,

development, manufacture, inspection, production marketing, promotion, advertising, distribution and/or sale of the Composix Patch for hernia repair surgery.

66. Defendants DAVOL and BARD knowingly committed knowing and willful violations of Chapter 75 of the North Carolina General Statutes, when they failed to safely design and construct an effective Composix Patch for hernia repair surgery.

67. While Defendants DAVOL and BARD knew or reasonably should have known that some Composix Patches were at risk while they were engaged in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and or selling of the Composix Patch for hernia repair surgery, specifically that the Composix bi-layer system, upon being subjected to stress after placement in the intra-abdominal space, posed a significant risk of separation, loss of shape, and migration that posed the danger of severe harm and death to patients.

68. Defendants have failed to inform the FDA of their knowledge concerning the dangers posed to patients with the use of all of the Composix Patches which are susceptible to failure.

69. Defendants have failed to inform the public at large of their knowledge concerning the dangers posed to patients with the use of all of the Composix Patches which are susceptible to failure.

70. DAVOL and BARD failed to give adequate warnings regarding the use and potential problems with such patches used for hernia repair.

71. Defendants' actions occurred while they were engaged in trade and commerce, and all of the conduct occurred during the course of their business.

72. Defendants' conduct in continuing to market, sell and distribute the Composix Patch

after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

73. As a direct and proximate result of the conduct of DAVOL and BARD, Dr. Kirk has been injured, and is therefore entitled to recover damages in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), trebled pursuant to the provisions of N.C.G.S. §75-16, and to recover his attorneys fees and costs pursuant to the provisions of N.C.G.S. §75-16.1.

**COUNT III**
**Breach of Implied Warranty**

74. Plaintiff Kirk re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

75. Defendants DAVOL and BARD are liable to Dr. Kirk for their breach of implied warranty in the following respect:

76. DAVOL and BARD sold the Composix Patch which was implanted in Dr. Kirk. DAVOL and BARD impliedly warranted to Dr. Kirk, his physicians and health care providers, that the Composix Patch was of merchantable quality and safe for the use for which they were intended.

77. DAVOL and BARD knew or should have known that the Composix Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

78. Dr. Kirk, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Patch was fit for such use.

79. When the Composix Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

80. Dr. Kirk suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

81. As a direct and proximate result of the breaches of warranty, Dr. Kirk was be damaged in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

**COUNT IV**
**Fraud**

82. Plaintiff Kirk re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

83. DAVOL and BARD, while in possession of unique and pertinent information involving the safety and mechanical reliability of its Composix Hernia Patches, presented these patches as being mechanically sound and failed to warn of their inherent design and/or manufacturing defects. DAVOL and BARD suppressed this information and continued sales and marketing of its product to the general public. DAVOL and BARD knew or should have known that Dr. Kirk had no means, other than full, accurate, and objective disclosure by DAVOL and BARD, of obtaining the relevant information.

84. Through their unique knowledge and expertise regarding the affected nature of the Composix Hernia Patches, and through their statements to physicians and their patients in

advertisement, promotional materials, and other communications, DAVOL and BARD professed and affirmed to Dr. Kirk their knowledge of the truth of the representation that the Composix Patches were safe for their intended use and were free from design and/or manufacturing defects.

85. The misrepresentations and omissions were made intentionally to induce Dr. Kirk to purchase Defendants' Composix Hernia Patches, in order to reap the high profit margin relating to the Composix Patches.

86. The conduct of DAVOL and BARD took unconscionable advantage of its dominant position of knowledge, engaging in constructive fraud in its relationship with Dr. Kirk. Misled by this veil of fraud, Dr. Kirk reasonably relied on the representations of DAVOL and BARD.

87. As a direct and proximate result of the fraud on the part of DAVOL and BARD, Dr. Kirk has been damaged in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

**WHEREFORE**, the Plaintiff prays the Court as follows:

1. For judgment against the Defendants in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

2. That any amount awarded to the Plaintiff be trebled, pursuant to N.C.G.S. §75-16.

3. That the costs of this action, including the Plaintiff's reasonable attorneys' fees pursuant to N.C.G.S. §75-16.1, be taxed by the Court against the Defendants.

4. For trial by jury on all issues so triable.

5. For such other and further relief as to the Court seems just and proper.

This the 14th day of January, 2008.

**Attorneys for Plaintiff**

SHIPMAN & WRIGHT, L.L.P.

/s/ Gary K. Shipman
gshipman@shipmanlaw.com
North Carolina Bar No. 9464

/s/ Jean S. Martin
jmartin@shipmanlaw.com
North Carolina Bar No. 25703

575 Military Cutoff Road, Suite 106
Wilmington, NC 28403
Telephone: 910-762-1990
Facsimile: 910-762-6752

## CERTIFICATION

I hereby certify that on this 15th day of January, 2008, that a true copy of the foregoing Plaintiff's First Amended Complaint has been filed electronically and that it is available for viewing and downloading from the ECF system. I also certify that a true copy of this document was also mailed or electronically mailed to the following:

**Ernest Cory** ecory@cwcd.com

**Kirby T. Griffis** kgriffis@spriggs.com

**Mark T. Nugent** mnugent@morrisonmahoney.com

**Thomas M. Robinson** trobinson@morrisonmahoney.com

**Teresa C Toriseva** tct@wtwlaw.us

**Samuel J. Abate, Jr**
Pepper Hamilton LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

**Andrew L. Colocotronis**
Baker, Donelson, Bearman, Caldwell & Berkowitz
900 South Gay Street
2200 Riverview Tower
Knoxville, TN 37902

**Kathleen Ann DeLaney**
Delaney & Delaney LLC
3640 North Washington Blvd.
Indianapolis, IN 46205

**John A. Fagg, Jr**
Moore & Van Allen
100 N. Tryon Street
Suite 4700
Charlotte, NC 28202-4003

**Gary D. Hermann**
Hermann, Cahn & Schneider
Suite 500
1301 East Ninth Street
Cleveland, OH 44114

**James B. Irwin**
Irwin Fritchie
400 Poydras Street
Suite 2700
New Orleans, LA 70130

**D. Mitchell McFarland**
Harrison Bettis Staff McFarland & Weems
500 Dallas Street
Suite 2600
Houston, TX 77002

**Robert H. Pedersen**
Watkins & Eager
P.O. Box 650
Jackson, MS 39205-0650

**Michelle R. Schwarz**
Mandelbaum & Schwarz
2012 Hamilton Lane
Suite 303
Las Vegas, NV 89106

**Lesley Stine**
Saieva, Rousselle & Stine
601 W. Swann Ave., Suite B
Tampa, FL 33606

**Kara T. Stubbs**
Baker Sterchi Cowden & Rice
2400 Pershing Road
Suite 500
Kansas City, MO 64108

**Kevin K. Trout**
Heron Sweet Fox & Trout
2601 NW Expressway
Suite 707 W
Oklahoma City, OK 73112

**Danene J. Tushar**
Fraser Stryker Law Firm
409 South 17th Street
Suite 500 Energy Plaza
Omaha, NE 68102

**David Bowman White**
Gallivan White and Boyd
PO Box 1505
Greenville, SC 29603

**Dennie M. Zankel**
Baker and Sterchi
1010 Market Street
Suite 950
St. Louis, MO 63101

**Peter J. Brodhead**
Spangenberg, Shibley & Liber
2400 National City Center
Cleveland, OH 44114-3400

**Nicholas A. DiCello**
Spangenberg, Shibley & Liber
2400 National City Center
1900 East Ninth Street
Cleveland, OH 44114

**Gary D. Hermann**
Hermann, Cahn & Schneider
Suite 500
1301 East Ninth Street
Cleveland, OH 44114

**Jeffrey S. Moeller**
Hermann, Cahn & Schneider
Suite 500
1301 East Ninth Street
Cleveland, OH 44114

/s/ Donald A. Migliori
Donald A. Migliori
RI Bar#4936
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940
Telephone: 401-457-7700
Fax: 401-457-7708